GAUDIN, Judge.
Don D. Mitchell was convicted of possession of cocaine and ultimately sentenced as a second multiple offender to two and a half years at hard labor, without benefit of probation, parole, or suspension of sentence.
On appeal he assigns these district court errors:
(1) there was no probable cause to arrest him,
(2) the evidence seized at the alleged crime scene should have been suppressed,
(3) there was no proof of guilt, and
(4) the sentence was excessive.
*1230 Finding no reversible error, we affirm Mitchell’s conviction and his slightly enhanced sentence. Originally, Mitchell was sentenced to two years at hard labor but six months were added after a multiple offender hearing. Mitchell admitted to a prior armed robbery conviction, for which he served approximately three years of a five-year sentence in prison.
ASSIGNMENTS 1, 2 AND 3
Mitchell was charged with possession of cocaine with intent to distribute (LSA-R.S. 40:967 A) but the trial judge found him guilty only of possession (LSA-R.S. 40:967 C), a verdict responsive to possession with intent to distribute.
A motion to suppress was heard on August 28 and 29,1997, and denied on September 15, 1997. The bench trial began on December 18,1997. Mitchell was convicted on the testimony of two Jefferson Parish police officers, Wade St. John and Salvadore Brocato, who said that on the evening of January 25, 1997, they were patrolling on the West Bank Expressway in Marrero, Louisiana. There is a Shell service station at the intersection of the Expressway with Ames Boulevard, known to officers as a high crime, drug-trafficking area.
Under cross examination, St. John testified that he could not remember all of the details of the arrests he had made at that area, but he said he had made “numerous” arrests there. He recalled several arrests with particularity. Like St. John, Brocato testified that the Shell station area was “... a high drug-trafficking area where numerous arrests had been made.”
Mitchell testified at trial that while certain places in close proximity to the Shell station were known for and were regularly used for drug transactions, the well-lit station was not. There is a McDonald’s hamburger shop right across from the Shell station. Mitchell was asked about illegal drug activity in the area of the Expressway-Ames Boulevard intersection. bHe said:
“... behind McDonald’s by the club Tina’s, they be on that little stretch selling drugs right there. Down the street in Villa d’Ames, they sell drugs there. Everybody know that’s a drug area.”
Where else in that area do they sell drugs?, he was asked. He replied:
“They sell everywhere.”
In any event, St. John and Brocato said that when they drove their unmarked patrol ear into the service station, they observed what St. John described as “something going on.” Mitchell was standing outside a red Dodge automobile. The officers testified they saw Mitchell handing something to the person in the driver’s seat, later identified as Johnnie Jones. St. John and Brocato decided to investigate further. St. John said:
“... I exited the vehicle and my partner exited the vehicle and we asked the subjects to show us their hands ... Mr. Mitchell turned toward us — he didn’t raise his hands at first; we asked him twice, at which time he casually started to raise his hands, and he discarded a clear plastic bag with unknown objects in it to the ground.”
A third person, later identified as Brian Rogers, was standing near the red Dodge.
St. John stated that of the approximately 50 arrests he had made in drug cases, “ maybe more than half of them that I’ve made were throw downs.”
Brocato said that he saw Mitchell discard the clear plastic bag with his left hand. Bro-cato testified:
b“- ■ • I kept my view on the bag that was on the ground that he discarded, and once all three individuals were patted down for weapons, I moved to recover the bag.” The 48 objects in the bag field tested positive for cocaine and they were stipulated at trial to be crack cocaine.
Mitchell testified, that he has seen Jones selling drugs “many times,” about 50 times. Mitchell said that Rogers also sold drugs. Nonetheless, Mitchell said that when he had finished pumping gas in his ear, he walked up to Jones’ nearby automobile and the two began a conversation, which the police interrupted.
At no time, Mitchell said, did he and Jones talk about drugs. When the officers arrived, *1231 Mitchell said that Jones got out of his car but he was “wrestled down” by the police. At that time, Mitchell said, Jones tried to throw the drugs under a plant next to the gas pumps. According to Mitchell, Jones then told the officers that Mitchell had thrown the crack cocaine by the flower pots.
In rebuttal, Brocato again testified that Mitchell, not Jones, had discarded the cocaine and that Jones was “passive” and did not fight with the police.
It appears clear from the record, once the trial judge accepted the testimony of the two police officers, that there was probable cause to arrest Mitchell, that the cocaine seized at the scene was admissible as evidence and that there was proof beyond reasonable doubt of Mitchell’s guilt. The three assignments of error relating to probable cause, admissibility of evidence and the defendant’s apparent guilt are without substance.
^ASSIGNMENT NO. 4
The sentence imposed, considering Mitchell’s prior armed robbery conviction, was not excessive.
ERROR PATENT
We remand only for the trial judge to advise Mitchell of the three-year prescriptive period for applying for post-conviction relief, LSA-C.Cr.P. art. 930.8. Proof that Mitchell received such notice should be placed in this record.
AFFIRMED.